*Pattanayak v. Mastercard Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of March, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

Sambit Pattanayak,

> *Plaintiff-Appellant,*

> v.                                                          22-1411

Mastercard Inc.,
> *Defendant-Appellee.*

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | ALAN GENITEMPO (Todd M. Galante, *on the brief*), Piro Zinna Cifelli Paris & Genitempo LLC, Nutley, NJ. |
| **FOR DEFENDANT-APPELLEE:** | DIANE WINDHOLZ (Laura Victorelli, *on the brief*), Jackson Lewis P.C., New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Sambit Pattanayak appeals the district court's (1) February 24, 2022 order dismissing his First Amended Complaint ("FAC") against his former employer Defendant-Appellee Mastercard Inc. for failure to state a claim under Rule 12(b)(6); and (2) June 6, 2022 order denying as futile his motion for leave to file a Proposed Second Amended Complaint ("PSAC"). *See Pattanayak v. Mastercard Inc.*, No. 21-cv-2657, 2022 WL 564047 (S.D.N.Y. Feb. 24, 2022); *Pattanayak v. Mastercard Inc.*, No. 21-cv-2657, 2022 WL 2003317 (S.D.N.Y. June 6, 2022). Pattanayak brought discrimination, retaliation, and hostile work environment claims against Mastercard under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 *et seq.*; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* On appeal, Pattanayak argues that the district court erred by improperly applying a heightened pleading standard and by concluding that the PSAC cannot withstand a motion to dismiss for failure to state a claim.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

---

[1] Pattanayak does not raise his NYSHRL claims on appeal, so we deem them abandoned, *see Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997), and we do not decide whether the district court erred by declining to exercise supplemental jurisdiction over these claims.

"We review *de novo* a district court's grant of a defendant's motion to dismiss, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. A district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed *de novo*." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (cleaned up). "[W]hen denial of leave to file a revised pleading is based on a legal interpretation, such as futility, a reviewing court conducts a *de novo* review." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015) (citation omitted).

**I.      Pleading Standard**

Pattanayak contends that several of the district court's comments during oral argument went "far beyond the plausibility standard which is to be applied at the pleading stage." Appellant's Br. at 11. We need not review those comments because, having reviewed the orders from which Pattanayak appeals, we see nothing to suggest that the district court's decision, memorialized in its written rulings, relied upon a heightened pleading standard. Even if the district court's comments during oral argument were properly part of our review, we would reject Pattanayak's argument that they suggested that the district court was applying a heightened pleading standard. Many of the comments Pattanayak points to were nothing more than examples of the district court properly applying the retaliation pleading standard,[2] ascertaining whether the FAC alleged, on one hand, "protected activity" complaining of conduct prohibited under federal

---

[2] "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (cleaned up). To oppose an unlawful employment practice, a plaintiff must do more than make a "generalized" complaint; rather, the plaintiff must complain in a manner so that her employer "reasonably . . . understood that she was complaining of conduct prohibited by Title VII." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (cleaned up).

law or, on the other hand, "generalized" grievances.  *See, e.g.*, Joint App'x at A-434 ("[W]hen [Pattanayak] complained, I don't see anything that referenced a complaint about race, a complaint about national origin, or even a complaint about disability."); *id.* at A-439 ("What did he complain about? . . . You will have to show a jury what it is that he complained about that will give them a basis on which to say that he has the right to complain about this racial discrimination."); *id.* at A-442 (characterizing as "conclusory" the FAC's allegation that Pattanayak "complained about discrimination" generally).

Moreover, the district court did not err by noting that Pattanayak cannot use "as evidence of racial discrimination" the FAC's allegations that Mastercard was "motivated by their perception of my health." *Id.* at A-449.   The district court properly declined to stretch the FAC's allegations about disability discrimination to cover race-discrimination claims.   We thus reject Pattanayak's argument that the district court erred by applying a heightened pleading standard.

**II.     Title VII and ADA Claims**

The district court properly concluded that the PSAC fails to state a claim under Title VII and the ADA.[3]

A.      Discrimination Claims

---

[3] The parties dispute when Pattanayak filed his Charge of Discrimination with the EEOC, which is not available in the record.  We take as true the PSAC's allegation that "[o]n or around November 26, 2018, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission."  App'x at A-509.   Three-hundred days prior to the filing date is January 30, 2018, so any claims that accrued before that date are not timely.   For the reasons stated *infra*, however, any error by the district court in calculating the statute of limitations was harmless because the PSAC fails to state a claim under Title VII and the ADA, even if the time-barred allegations were included.

Although the district court likely applied the continuing-violation doctrine correctly, we do not decide this issue because we find the PSAC, including time-barred allegations, failed to state a Title VII or ADA claim and Pattanayak's motion for leave to amend was thus futile.

4

### 1.  *Title VII Claims*

To plead racial or national-origin discrimination under Title VII, a plaintiff must allege facts demonstrating that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  The PSAC fails to supply "minimal support" for the inference that Mastercard was "motivated by discriminatory intent" based on Pattanayak's race or national origin. *Id.*  First, as the district court correctly observed, Pattanayak fails to connect his superior's March 2016 comments, his April 2017 transfer, his February 2018 compensation reduction, or his August 2018 termination with any allegations supporting an inference of discriminatory intent.[4]  These allegations do no more "than recite conclusory assertions" of discrimination based on race or national origin without alleging any "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).  Moreover, the fact that Pattanayak was the only employee of a protected class in a department does not, standing alone, give rise to an inference of discriminatory motive.

Second, we decline to infer discriminatory motive based on disparate treatment between Pattanayak and Ed Lee, who also ran one of Mastercard's regional offices but received more resources than Pattanayak.  A plaintiff raising a disparate-treatment claim must show "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself," including "whether the plaintiff and those [she] maintains were similarly situated were

---

[4] Pattanayak's manager's "outwardly disappointed" appearance in July 2018 upon learning that Pattanayak is not Indian does not support an inference of discriminatory motive.  PSAC ¶ 158.

subject to the same workplace standards." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (cleaned up). But Lee was a Senior Vice President, and Pattanayak was a Vice President. *See* PSAC ¶¶ 86, 139. Indeed, the PSAC concedes that Pattanayak was not "on par with Lee and other APT regional leads." *Id.* ¶ 86. This difference defeats Pattanayak's disparate-treatment claim. So we affirm the district court's dismissal of Pattanayak's Title VII discrimination claims.

### 2. *ADA Claims*

The district court correctly dismissed Pattanayak's ADA discrimination claims. "The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). At the pleading stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84 (cleaned up).

The PSAC fails to provide "plausible support" permitting even a "minimal inference" of discriminatory motive. *Id.* First, we reject Pattanayak's argument that the October 2017 denial of his request for an extended medical leave gives rise to an inference of discriminatory motive based on disparate treatment. Pattanayak argues that a similarly situated colleague received a longer period of medical leave for "health/personal" reasons. PSAC ¶¶ 96-97. But the PSAC offers no allegations that Pattanayak met the requirements for an extended medical leave or that his colleague's "health/personal condition" was comparable to or less severe than Pattanayak's.

6

*Id.* ¶ 96. So the PSAC does not permit an inference that Pattanayak and his colleague were in fact similarly situated.

Second, the denial of Pattanayak's requests for additional resources in October 2017 and April 2018 do not permit an inference of discriminatory motive. Pattanayak alleges that "Lee . . . informed [him] that he was not given new resources directly as a result of [his] health condition and its impact on [his] long-term future in his role." *Id.* ¶ 142. But as the PSAC alleges, Pattanayak requested additional resources from his manager, not Lee, so we cannot infer that the denial of new resources was motivated by discrimination based solely on Lee's comment. Any inference of discriminatory motive is further weakened by the PSAC's allegation that in 2018 Mastercard transferred into Pattanayak's department at least two employees who remained there after his return from paternity leave. *See id.* ¶¶ 131-132, 143, 146. This suggests that Pattanayak's requests for additional resources were not in fact ignored or denied.

Third, Pattanayak's termination in August 2018 does not give rise to an inference of discriminatory animus. Pattanayak alleges that Mastercard "communicated within the organization that [his] termination was due to 'health' issues. . . . Yet, when [Pattanayak] received his termination letter, no reason for termination was provided." *Id.* ¶¶ 170-171. Without any other factual allegations, such as the date, medium, author, or recipient of the alleged communications, Pattanayak has not provided "enough facts to state a claim" for discrimination on the basis of disability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

B.      Retaliation Claims

The district court did not err by dismissing Pattanayak's Title VII retaliation claims. The PSAC alleges that Pattanayak lodged three sets of complaints. But these alleged complaints are

7

too "generalized" for Mastercard to have "reasonably . . . understood" that Pattanayak was opposing conduct prohibited by Title VII. *Rojas*, 660 F.3d at 108. Specifically, none of Pattanayak's allegations suggests he put Mastercard on notice of unlawful conduct based on his race or national origin. Moreover, the allegations concerning Pattanayak's wife are insufficient because he fails to allege that his wife is a member of a protected class. Pattanayak also points to no authority to suggest that his wife's involvement in her own severance negotiations amounts to *his* engagement in a protected activity. We thus agree with the district court that Pattanayak's allegations do not plausibly plead that his complaints amounted to a protected activity, so we affirm the dismissal of his Title VII retaliation claims.

C. Hostile Work Environment Claims

The district court did not err by concluding that Pattanayak failed to state a claim for hostile work environment under Title VII and the ADA. To establish a hostile work environment, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and that the conduct is connected to an employee's protected characteristic. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up); *see Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (applying the same standard to the ADA). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

8

whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (cleaned up).

Pattanayak alleges a hostile work environment based on a handful of incidents that do not amount to "severe or pervasive" conduct. *Harris*, 510 U.S. at 21. First, we recently found conduct more egregious than Pattanayak's supervisor's March 2016 and Lee's 2017 comments (PSAC ¶¶ 37-38, 41, 101) to be insufficiently severe to make out a hostile work environment. In *Boyar v. Yellen*, for example, we affirmed the dismissal of a hostile work environment claim based on allegations that a supervisor threatened to "wring [the plaintiff's] neck," "ignored him at a meeting," "yelled at him very loudly," and "told him he had 90 minutes to complete two certification exams, when he had 60 minutes to complete each." No. 21-507, 2022 WL 120356, at *3 (2d Cir. Jan. 13, 2022) (cleaned up). Pattanayak's allegations fall well short of those in *Boyar*.

Second, Pattanayak's rejected requests for resources, his heavy workload, and his exclusion by his coworkers in 2017 and 2018 are also insufficient. The PSAC fails to allege that these incidents "unreasonably interfere[d] with an employee's work performance." *Littlejohn*, 795 F.3d at 321. Indeed, Pattanayak allegedly "exceed[ed] 2018's full-year sales targets within just the first six months of 2018" at the same time as the incidents. PSAC ¶ 200; *see, e.g.*, *Littlejohn*, 795 F.3d at 321 (rejecting a hostile work environment claim based, in part, on the employer requiring the plaintiff to recreate work, increasing the plaintiff's hours, "distanc[ing] herself from" plaintiff "when she was nearby," "declin[ing] to meet with" plaintiff, and "replac[ing] [plaintiff] at meetings").

9

In the aggregate, these incidents do not amount to a pervasive hostile work environment. The alleged incidents occurred over the course of two years and concerned different departments and supervisors. "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (cleaned up). Moreover, even though many of Pattanayak's allegations reflect the reality that "many bosses are harsh, unjust, and rude," Pattanayak fails to link or connect any of these allegations "to the claimed ground of discrimination," *i.e.*, his race, national origin, or disability. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). So we affirm the district court's dismissal of Pattanayak's hostile work environment claim.

\* \* \*

We have considered all of Pattanayak's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10